UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABULAZEZ MOHAMED ALGAZZALI,<br>　　　　　Plaintiff,<br>　　v.<br>CAROLYN W. COLVIN,<br>　　　　　Defendant. | Case No. 15-cv-01847-MEJ<br><br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 25, 28 |

## INTRODUCTION

Plaintiff Abulazez Mohamed Algazzali ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of Defendant Carolyn W. Colvin ("Defendant"), the Acting Commissioner of Social Security, denying Plaintiff's claim for disability benefits. Pending before the Court are the parties' cross-motions for summary judgment. Dkt. Nos. 25, 28. Pursuant to Civil Local Rule 16-5, the motions have been submitted on the papers without oral argument. Having carefully reviewed the parties' positions, the Administrative Record ("AR"), and relevant legal authority, the Court hereby **DENIES** Plaintiff's motion and **GRANTS** Defendant's cross-motion for the reasons set forth below.

## BACKGROUND

Plaintiff was admitted to the Doctors Medical Center on September 30, 2009 with complaints of progressing bilateral leg weakness and vomiting following a trip to Yemen, during which he participated in a month-long fast. AR 437-39, 447, 450. Plaintiff stated he had a stroke approximately one year prior with left-sided facial droop, and an evaluating doctor wrote that he "has made a near-full recovery and is usually spontaneously ambulatory." AR 450. Plaintiff was diagnosed with acute renal failure. AR 443, 445-46, 452-55. However, he stipulated that acute

1    renal failure resolved and was not disabling. AR 72, 653, 682, 740.

2          In an October 2, 2009 assessment at Doctors Medical Center, Plaintiff had near proficient
3    functional mobility and did not require intervention with skilled services to address mobility. AR
4    443. Plaintiff's extremities were normal on November 28, 2009. AR 526. He had normal leg
5    strength and was encouraged to walk for exercise on December 2, 2009. AR 673.

6          On March 11, 2010, Plaintiff complained of bilateral foot swelling. AR 540. He was
7    given compression stockings and discharged. AR 544.

8          On June 26, 2011, Plaintiff complained of left leg swelling and hip pain after an 18-hour
9    plane trip. AR 550. His pain originated from a cellulitis infection, which resolved. AR 549, 561-
10   62, 662.

11         In an Exertion Questionnaire dated August 28, 2011, Plaintiff indicated he has to use a
12   cane when he walks long distances. AR 346-48.

13         On September 7, 2011 and November 17, 2011, Plaintiff presented to the Richmond
14   Health Center for medication refills. AR 665-66. He did not have any abnormalities with his legs.
15   AR 665-66.

16         On October 6, 2011, Eugene McMillan, M.D., performed a consultative examination. AR
17   408-10. Plaintiff's chief complaints were diabetes and left leg weakness. AR 408. Plaintiff told
18   Dr. McMillan he had left-sided weakness following a three-day admission to Doctors Medical
19   Center, painful eyes, hypertension, kidney problems (15 years prior), and asthma (requiring a visit
20   to an emergency room six years prior). AR 408. On examination, Dr. McMillan observed that
21   Plaintiff used a cane in his right hand and steadied his gait by "put[ting] his hands on his wife's
22   shoulder" when he entered and exited the examination room, but he could walk normally without
23   an assistive device. AR 408.He could get on and off the examining table with some difficulty but
24   without assistance. AR 410. He had 4/5 or 5/5 strength, normal range of motion in all
25   extremities, no facial weakness, and "made intermittent effort at grip strength in left-sided
26   testing." AR 409.

27         Dr. McMillan diagnosed Plaintiff with type 2 diabetes, hypertension, left sided gait

28

abnormalities, weakness, and possible history of renal disease. AR 410. He "suspect[ed] that [Plaintiff] did have a right hemispheric cerebrovascular accident with residual left-sided coordination and gait problems." AR 410. He opined Plaintiff was limited to less than two hours of standing and walking per day and six hours of sitting. AR 410. Plaintiff would also need a cane to stabilize his gait, could occasionally lift and carry 10 pounds, and could not bend, stoop, climb, or balance. AR 410.

State agency reviewing physician G.B. Williams, M.D., reviewed the treatment evidence, as well as Dr. Morris's examination, on November 7, 2011. AR 109-18, 126-28. Dr. Williams noted there was "no documentation to support CVA [cerebrovascular accident] in the MER [medical evidence of record]," though he opined that CVA was a severe impairment. AR 114, 124. He opined Plaintiff could lift/carry 20 pounds occasionally and 10 pounds frequently, stand/walk and sit for six hours each, needed a cane for long distances, and was limited in pushing/pulling using his left extremities. AR 115, 126. Dr. Williams also opined Plaintiff could only occasionally climb ramps, stairs, ladders, ropes, or scaffolds. AR 115-16, 126-27. Also, he said that Plaintiff could only occasionally kneel, crouch, or crawl. AR 115-16, 126-27. He thought Plaintiff could frequently balance, stoop and should avoid concentrated exposure to hazards such as machinery and heights. AR 115-16, 126-27.

State agency reviewing physician L. DeSouza, M.D., concurred with Dr. Williams on July 26, 2012. AR 135-39, 147-51. Dr. DeSouza opined that Dr. McMillan's opinion was "[n]ot supported by all the evidence in file," was "without substantial support from other evidence of record," and that it "relie[d] heavily on [Plaintiff's] subjective report of symptoms." AR 140, 149, 152.

On May 14, 2012, Plaintiff complained of headache and bilateral lower leg swelling. AR 576, 579. He was ambulatory, had no peripheral edema, and normal extremities. AR 574, 579. Plaintiff was diagnosed with acute asthma and discharged the same day. AR 578. Later that month, his asthma stabilized. AR 700.

On June 16, 2012, Plaintiff complained of left hip pain after a fall. AR 591. He was given

3

1  pain medication and discharged the same day.  AR 594.

2  On July 10, 2012, Plaintiff requested medication refills for allergies and complained of
3  "mild knee pain" when ascending stairs.  AR 755.  He did not have any significant objective
4  findings in his extremities.  AR 755. ("No edema.").

5  On August 8, 2012, Plaintiff's asthma was exacerbated from a fire, after which he was
6  referred to primary care.  AR 767, 769.  He presented as scheduled for medication refills on
7  October 9, 2012, and he did not have any specific complaints or significant exam findings.  AR
8  743 ("No edema.").

9  On December 13, 2012, Plaintiff complained of knee pain, for which he was prescribed
10 pain medication.  AR 759, 762.  The attendant noted Plaintiff had a steady gait.  AR 759, 763.  As
11 of January 2013, Plaintiff had good weight bearing in his extremities, and had no issues with his
12 back (he could stand on his toes and heels and squat fully).  AR 787.  He was referred to physical
13 therapy and given Tylenol.  AR 787Knee x-rays were normal except for a foreign object near the
14 right knee, present since childhood.  AR 791, 836 ("not necessarily bothering" him).

15 On March 1, 2013, Plaintiff was not in acute distress, had "relatively normal gait," good
16 range of motion in his hips, and had normal strength, sensation, reflexes, and ligaments.  AR 778.
17 In a physical therapy evaluation dated March 20, 2013, Plaintiff's gait was "non trendelenburg"
18 and he had "ok" balance.  AR 776.  X-rays showed some impingement in the hip and "minimal
19 degenerative changes" in the right knee.  AR 776.An MRI of the knee showed a torn meniscus.
20 AR 809, 817.  An MRI of the left hip was normal but showed a "[p]ossible very small . . . labral
21 tear. [Also, there was] limited evaluation due to patient's large size and patient motion" during the
22 MRI.  AR 820.  The MRI report recommended a repeat study.  AR 820.Plaintiff's physical therapy
23 treatment plan consisted of therapeutic exercises.  AR 778, 814.

24 Plaintiff had normal range of motion on May 28, 2013.  AR 810.  In an evaluation of
25 Plaintiff's fitness for surgery, he answered "no" to a question regarding a history of stroke.  AR
26 802.

27 Plaintiff had arthroscopic knee surgery on June 3, 2013.  AR 70.  He walked without an

28

4

assistive device after the surgery. AR 831-36. He attended physical therapy from August to October 2013, which included weighted exercises, heat, and ice. AR 825-30. During his recovery, Plaintiff's physical therapist observed he had an "antalgic gait pattern [with] mild short stance on [the] right side." AR 834.

## SOCIAL SECURITY ADMINISTRATION PROCEEDINGS

On August 23, 2011, Plaintiff filed a claim for Disability Insurance Benefits. AR 277-94. On November 7, 2011, the Social Security Administration ("SSA") denied Plaintiff's claim, finding that Plaintiff did not qualify for disability benefits. AR 108. Plaintiff subsequently filed a request for reconsideration, which was denied. AR 187-92. On August 22, 2012, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 193-94. ALJ Richard P. Laverdure conducted a hearing on July 23, 2013. AR 60-107. Plaintiff testified in person at the hearing and was represented by counsel, Rosemary Dady. AR 62. The ALJ also heard testimony from Vocational Expert Joel Greenberg and Medical Expert Kweli Amusa. AR 68-89, 91-94, 104-107.

### A. Plaintiff's Testimony

Plaintiff testified his past work included working as a cashier, during which his duties also included packing, unpacking, cleaning, assembling, and stocking. AR 94. He also worked as an apartment manager, which consisted of cleaning, and landscaping. AR 96, 101-02. He stopped working in 2009, when the company he was working for went out of business. AR 67-68. The company was initially his but he began to find it difficult to work and brought in people to help. AR 68. Plaintiff testified he underwent arthroscopic surgery on his right knee on June 3, 2009. AR 69-70.

### B. Vocational Expert's Testimony

The ALJ questioned Joel Greenberg, the vocational expert, regarding a claimant's ability to perform Plaintiff's past work with his limitations. AR 105. Mr. Greenberg testified the jobs could be performed with such limitations. AR 105.

### C. Medical Expert's Testimony

Medical expert Kweli Amusa, M.D., also offered testimony at the hearing. AR 68-89. Dr. Amusa opined that from December 1, 2009 through June 15, 2012, Plaintiff could perform light work involving six hours of standing/walking and six hours of sitting; he could not climb ladders, ropes, or scaffolds; he could perform occasional postural movements; and he should avoid concentrated exposure to extreme cold and heat and moderate exposure to fumes, odors, dust, or poor ventilation. AR 80-82. After June 15, 2012, Dr. Amusa opined that Plaintiff's hip condition permitted him to perform light work with the same limitations except no more than two hours of standing and walking. AR 80-82.

### D. The ALJ's Findings

The regulations promulgated by the Commissioner of Social Security provide for a five-step sequential analysis to determine whether a Social Security claimant is disabled.[1] 20 C.F.R. § 404.1520. The sequential inquiry is terminated when "a question is answered affirmatively or negatively in such a way that a decision can be made that a claimant is or is not disabled." *Pitzer v. Sullivan*, 908 F.2d 502, 504 (9th Cir. 1990). During the first four steps of this sequential inquiry, the claimant bears the burden of proof to demonstrate disability. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). At step five, the burden shifts to the Commissioner "to show that the claimant can do other kinds of work." *Id.* (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)).

The ALJ must first determine whether the claimant is performing "substantial gainful activity," which would mandate that the claimant be found not disabled regardless of medical condition, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(i), (b). Here, the ALJ determined that Plaintiff had not performed "substantial gainful activity since December 1, 2009, the alleged onset date." AR 23.

---

[1] Disability is "the inability to engage in any substantial gainful activity" because of a medical impairment which can result in death or "which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

6

1    At step two, the ALJ must determine, based on medical findings, whether the claimant has
2  a "severe"[2] impairment or combination of impairments as defined by the Social Security Act.  20
3  C.F.R. § 404.1520(a)(4)(ii).  If no severe impairment is found, the claimant is not disabled.  20
4  C.F.R. § 404.1520(c).  Here, the ALJ determined that Plaintiff had the following severe
5  impairments: asthma and moderate obesity.  AR 23.  Beginning on June 16, 2012, Plaintiff had the
6  following additional severe impairments: osteoarthritis of the bilateral knees, torn medial
7  meniscus, right knee, status post arthroscopic surgery, and left hip pain(likely degenerative joint
8  disease).  AR 30.

9    If the ALJ determines that the claimant has a severe impairment, the process proceeds to
10 the third step, where the ALJ must determine whether the claimant has an impairment or
11 combination of impairments that meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt.
12 P, App. 1.  20 C.F.R. § 404.1520(a)(4)(iii).  If a claimant's impairment either meets the listed
13 criteria for the diagnosis or is medically equivalent to the criteria of the diagnosis, he is
14 conclusively presumed to be disabled, without considering age, education, and work experience.
15 20 C.F.R. § 404.1520(d).  Here, the ALJ determined that Plaintiff did not have an impairment or
16 combination of impairments that meet the listings.  AR 25, 30.

17   Before proceeding to step four, the ALJ must determine the claimant's Residual Function
18 Capacity ("RFC").  20 C.F.R. § 404.1520(e).  RFC refers to what an individual can do in a work
19 setting, despite mental or physical limitations caused by impairments or related symptoms.  20
20 C.F.R. § 404.1545(a)(1).  In assessing an individual's RFC, the ALJ must consider all of the
21 claimant's medically determinable impairments, including the medically determinable
22 impairments that are nonsevere[2].  20 C.F.R. § 404.1545(e).  Here, the ALJ determined Plaintiff,

---

[2] Severe condition(s) or impairment(s) of a claimant are required for that claimant to recover Social Security Disability benefits.   According to Title 20 of the Code of Federal Regulations, "[Claimants] must have a severe impairment. If [claimants] do not have any impairment or combination of impairments which significantly limits [their] physical or mental ability to do basic work activities, we will find that [they] do not have a severe impairment and are, therefore, not disabled." 20 C.F.R. § 404.1520(c). (Differentiation of the law regarding what qualifies as 'severe' and what is 'nonsevere').

7

from the alleged onset date of December 1, 2009 through June 15, 2012, has the RFC "to perform a range of light work" as follows:

> [H]e can lift and/or carry 20 pounds occasionally and 10 pounds frequently. He can stand and/or walk for six hours out of an eight-hour workday with regular breaks. He can sit for six hours out of an eight-hour workday with regular breaks. He cannot climb ladders, ropes, or scaffolds. He can occasionally crouch, crawl, kneel, stoop, and balance, and use ramps and stairs. He is precluded from concentrated exposure to cold, heat, fumes, odors, dust, and poor ventilation.

AR 25. Beginning on June 16, 2012, the ALJ determined Plaintiff had the ability "to perform a range of sedentary work" as follows:

> [He] can lift and/or carry 20 pounds occasionally and 10 pounds frequently. He can stand and/or walk for two hours out of an eight-hour workday with regular breaks. He can sit for six hours out of an eight-hour workday with regular breaks. He cannot climb ladders, ropes, or scaffolds. He can occasionally crouch, crawl, kneel, stoop, and balance. He is precluded from concentrated exposure to cold, heat, fumes, odors, dust, and poor ventilation.

AR 31.

The fourth step of the evaluation process requires that the ALJ determine whether the claimant's RFC is sufficient to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv); 404.1520(f). ""Past relevant work is work performed within the past 15 years that was substantial gainful activity, and that lasted long enough for the claimant to learn to do it. 20 C.F.R. § 404.1560(b)(1). If the claimant has the RFC to do his past relevant work, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). Here, the ALJ determined that Plaintiff could perform past relevant work as a cashier II and apartment manager. AR 29. Beginning June 16, 2012, the ALJ determined Plaintiff could perform past relevant work as a cashier II. AR 33.

As the ALJ determined Plaintiff could perform his past relevant work, he did not proceed to the fifth step of the analysis.

**E.    ALJ's Decision and Plaintiff's Appeal**

On August 13, 2013, the ALJ issued an unfavorable decision finding that Plaintiff was not disabled. AR 18-34. This decision became final when the Appeals Council declined to review it

on February 20, 2015. AR 1. Having exhausted all administrative remedies, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). On October 9, 2015, Plaintiff filed the present Motion for Summary Judgment. Dkt. No. 25. On November 5, 2015, Defendant filed a Cross-Motion for Summary Judgment. Dkt. No. 28.

## LEGAL STANDARD

This Court has jurisdiction to review final decisions of the Commissioner pursuant to 42 U.S.C. § 405(g). The ALJ's decision must be affirmed if the findings are "supported by substantial evidence and if the [ALJ] applied the correct legal standards." *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (citation omitted). "Substantial evidence means more than a scintilla but less than a preponderance" of evidence that "a reasonable person might accept as adequate to support a conclusion." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)). The court must consider the administrative record as a whole, weighing the evidence that both supports and detracts from the ALJ's conclusion. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). However, "where the evidence is susceptible to more than one rational interpretation," the court must uphold the ALJ's decision. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Determinations of credibility, resolution of conflicts in medical testimony, and all other ambiguities are to be resolved by the ALJ. *Id.*

Additionally, the harmless error rule applies where substantial evidence otherwise supports the ALJ's decision. *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990). A court may not reverse an ALJ's decision on account of an error that is harmless. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006)). "'[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.'" *Id.* (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

## DISCUSSION

In his Motion, Plaintiff argues the ALJ committed reversible error in failing to properly

1  consider the opinion of Dr. McMillan. Pl.'s Mot. at 3. Plaintiff maintains the ALJ rejected Dr.
2  McMillan's opinion without specific and legitimate reasons for doing so. Pl.'s Mot.at 4. In
3  response, Defendant argues the ALJ reasonably gave little weight to Dr. McMillan's opinion
4  because, while Dr. McMillan suspected Plaintiff had left side weakness and gait problems due to a
5  history of stroke, he correctly noted the absence of treatment records for a stroke. Def.'s Mot. at
6  5. Defendant further argues the ALJ correctly noted physical examinations dated after Dr.
7  McMillan's opinion revealed normal findings and no gait abnormalities. Def.'s Mot.at 7.

### A.  Legal Standard

When determining whether a claimant is disabled, the ALJ must consider each medical opinion in the record together with the rest of the relevant evidence. 20 C.F.R. § 416.927(b).); *Zamora v. Astrue*, 2010 WL 3814179, at *3 (N.D. Cal. Sept. 27, 2010). In deciding how much weight to give to any medical opinion, the ALJ considers the extent to which the medical source presents relevant evidence to support the opinion. 20 C.F.R. § 416.927(c)(3). Generally, more weight will be given to an opinion that is supported by medical signs and laboratory findings, and the degree to which the opinion provides supporting explanations and is consistent with the record as a whole. 20 C.F.R. § 416.927(c)(3)-(4).

In conjunction with the relevant regulations, the Ninth Circuit "developed standards that guide [the] analysis of an ALJ's weighing of medical evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527). Courts "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "By rule, the Social Security Administration [SSA] favors the opinion of a treating physician over non-treating physicians." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (citing 20 C.F.R. § 404.1527). If a claimant has a treatment relationship with a provider, and clinical evidence supports that provider's opinion and is consistent with the record, the provider will be given controlling weight. 20 C.F.R. § 416.927(c)(2). "The opinion of a treating physician

is given deference because 'he is employed to cure and has a greater opportunity to know and observe the patient as an individual.'" *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987)).

"If a treating physician's opinion is not given 'controlling weight' because it is not 'well-supported' or because it is inconsistent with other substantial evidence in the record, the [SSA] considers specified factors in determining the weight it will be given." *Orn*, 495 F.3d at 631. "Those factors include the '[l]ength of the treatment relationship and the frequency of examination' by the treating physician; and the 'nature and extent of the treatment relationship' between the patient and the treating physician." *Id.* (citing 20 C.F.R. § 404.1527(d)(2)(i)-(ii)).

> Additional factors relevant to evaluating any medical opinion, not limited to the opinion of the treating physician, include the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; the specialty of the physician providing the opinion; and "[o]ther factors" such as the degree of understanding a physician has of the [Social Security] Administration's "disability programs and their evidentiary requirements" and the degree of his or her familiarity with other information in the case record.

*Id.* (citing 20 C.F.R. § 404.1527(d)(3)-(6)). Nonetheless, even if the treating physician's opinion is not entitled to controlling weight, it is still entitled to deference. *See Orn*, 495 F.3d at 632 (citing SSR 96–2p,[3] 1996 WL 374188, at *4 (July 2, 1996)). "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96-2p at *4.

**B.     Application to the Case at Bar**

There is no dispute Dr. McMillan is an examining physician. Pl.'s Mot. at 3; Def.'s Mot. at 3. As noted above, Dr. McMillan diagnosed Plaintiff with diabetes, hypertension, possible history of renal disease, history of asthma, and left-sided gait abnormalities/weakness. AR 410, 778. He "suspect[ed] that [Plaintiff] did have a right hemispheric cerebrovascular accident with

---

[3] "[Social Security Rulings] do not carry the force of law, but they are binding on ALJs nonetheless." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); *see* 20 C.F.R. § 402.35(b)(1). The Ninth Circuit defers to the rulings unless they are "plainly erroneous or inconsistent with the Act or regulations." *Chavez v. Dep't of Health and Human Serv.*, 103 F.3d 849, 851 (9th Cir. 1996).

residual left-sided coordination and gait problems." AR 410, 778. Dr. McMillan opined Plaintiff was limited to less than two hours of standing and walking per day, limited to six hours of sitting, would need a cane to stabilize his gait, could occasionally lift and carry 10 pounds, and could not bend, stoop, climb, or balance. AR 410, 778.

The ALJ considered Dr. McMillan's opinion, but found it "contrasts sharply with the other evidence of record, which renders it less persuasive." AR 29. As to Dr. McMillan's suspicion that Plaintiff had left sided weakness and gait problems due to a history of stroke, the ALJ noted the absence of treatment records for a stroke stating (AR 29 ["there is nothing in the treatment record that suggests [Plaintiff] suffered a stroke"]). The Court finds the record supports this determination. Plaintiff argues the "[t]reatment records document [Plaintiff's] medical history is significant for stroke." Pl.'s Mot. at 6 (citing AR 450). However, there are no treatment records for stroke, and the cite Plaintiff provides constitutes Plaintiff's own report to a treating physician in September 2009 that he had a stroke the year prior. AR 437-39, 447, 450. Despite this report, Plaintiff denied a history of stroke or paralysis in May 2013. AR 29, 802; *see Bowen v. Yuckert*, 482 U.S. 137, 146, n.5 (1987) ("It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so."). Likewise, the remainder of Plaintiff's medical records does not document a history of stroke. *See* AR 410 (Dr. McMillan noted the absence of facial weakness in his examination), 437 (CVA/TIA not checked), 443 (stroke not noted in mobility assessment), 447, 450, 524, 540, 550, 560, 573, 591, 704 (Plaintiff circled "N" when asked if he had a problem with stroke), 734, 759, 767, 787.

Further, although Plaintiff cites his report that he had a stroke the year before, the doctor to whom he reported it wrote in the same note that Plaintiff "made a near-full recovery and is usually spontaneously ambulatory." AR 450. In addition, acute renal failure—not stroke—caused Plaintiff's complaints of leg weakness in September 2009, which resolved with treatment, and which Plaintiff stipulated was not disabling. AR 72, 443, 445-46, 452-55. Even if the Court were to find the ALJ erred in not discussing the September 2009 note, it was harmless because the same note documented Plaintiff's recovery, and it did not detract from the ALJ's recognition that the

medical evidence failed to document a medically determinable impairment related to stroke. *See* 20 C.F.R. § 404.1528 (requiring evidence in the form of signs, symptoms, and laboratory findings to support a medically determinable impairment); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-1163 (9th Cir. 2008) (if there is "'substantial evidence supporting the ALJ's conclusions'" and "the error 'does not negate the validity of the ALJ's ultimate conclusion,' such [error] is deemed harmless") (quoting *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197-98 (9th Cir. 2004)).

    The ALJ also rejected Dr. McMillan's opinion because "subsequent physical examinations . . . revealed normal findings and no gait abnormalities." AR 29. Substantial evidence supports this finding. For example, Plaintiff had normal extremities and leg strength in November and December 2009, and his doctor recommended he walk for exercise. AR 526, 673-74. Left hip pain in June 2011 was related to a skin infection that resolved. AR 549-50, 561-62, 662. There were no abnormalities noted with his legs in September or November 2011, which was the same period that Dr. McMillan examined Plaintiff. AR 408, 665-66. Although Dr. McMillan observed Plaintiff had "made intermittent effort at grip strength in left-sided testing," he also found Plaintiff had 4/5 or 5/5 strength and normal range of motion in all extremities and no facial weakness. AR 409. On May 14, 2012, Plaintiff complained of bilateral lower leg swelling but was ambulatory, did not have peripheral edema, and had normal extremities on examination. AR 29, 574, 576, 579. On July 10, 2012, Plaintiff complained of "mild knee pain when he goes up the stairs" but did not have any swelling. AR 27, 29, 755. On October 9, 2012, Plaintiff did not have any complaints or significant examination findings. AR 27, 29, 743. He had a steady gait in December 2012. AR 27, 759, 763. In January 2013, he had stable ligaments, good weight bearing, could stand on toes and heels, and could squat fully. AR 29, 32, 787. In March 2013, he walked with a "relatively normal gait" despite complaints of hip and knee pain; he had normal strength, sensation, reflexes, ligaments, and "ok" balance. AR 27, 29, 776, 778. In May 2013, Plaintiff did not have any leg swelling and had normal range of motion. AR 810. The Court finds the ALJ's decision consistent with this record. *See* 20 C.F.R. § 404.1527(c)(3)-(4) (in evaluating a

medical opinion, the agency considers the support the source provides for the opinion and the consistency with the record as a whole), 404.1528 (a claimant's report of symptoms alone is insufficient to prove a medically determinable impairment; there must be evidence in the form of signs, symptoms, and laboratory findings).

The ALJ also rejected Dr. McMillan's opinion that Plaintiff needed a cane to walk. AR 29, 410. Plaintiff argues the medical record supports Dr. McMillan's finding. Pl.'s Mot. at 6. In support of his position, Plaintiff notes the August 2011 Exertion Questionnaire he completed, in which he indicated he has to use a cane to walk long distances. AR 348. However, the ALJ found Plaintiff's testimony was not fully credible (AR 29), and Plaintiff does not challenge that assessment here and therefore cannot rely on his own testimony to support this claim. Plaintiff also cites a July 2013 treatment note noting an antalgic gait pattern, but the same note reflects that he was "ambulating without [an] adaptive device at this point." AR 834. In November 2011, Dr. Williams opined Plaintiff would require a cane for long distances. AR 114-15. However, Plaintiff did not indicate he used a cane to walk at the hearing, nor is there any indication of the use of a cane in the treatment record. AR 79 (medical expert Dr. Amusa testifying he did not "see[] the need to use an aid to ambulate" in the record), 94-104 (Plaintiff's testimony regarding his previous work). *See Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (ALJ properly rejected plaintiff's assertion he needed a cane given the lack of a prescription). Indeed, the only mention of a cane in the record was at the consultative examination with Dr. McMillan. AR 409. Plaintiff used a cane when he entered and exited the examination room, but he could walk normally without any assistive device. AR 409. He could also get on and off the examining table with some difficulty but without assistance, and he had normal or nearly normal strength. AR 410. As the ALJ's finding that Plaintiff did not need to use a cane was reasonable in light of the substantial evidence in the record, the ALJ properly rejected Dr. McMillan's opinion on this basis.

While Plaintiff may disagree with the ALJ's findings, the Court finds the record as a whole constitutes substantial evidence supporting the ALJ's decision to give Dr. McMillan's opinion little weight. Further, even "where the evidence is susceptible to more than one rational

14

interpretation," the Court must uphold the ALJ's decision. *Magallanes*, 881 F.2d at 750 (citing *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984); *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)).  The ALJ must resolve determinations of credibility, resolution of conflicts in medical testimony, and all other ambiguities.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

## CONCLUSION

For the reasons stated above, the Court hereby **DENIES** Plaintiff's Motion and **GRANTS** Defendant's Cross-Motion.

**IT IS SO ORDERED.**

Dated: February 1, 2016

_____
MARIA-ELENA JAMES
United States Magistrate Judge

15